UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARK ALLAN AIMERY,

        Plaintiff,

v.

SCOTT WRIGGELSWORTH et al.,

        Defendants.

Case No. 1:19-cv-414

Honorable Janet T. Neff

_____/

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) Plaintiff's Eighth Amendment claims regarding double-bunking and confinement with dangerous felons and his First Amendment access-to-courts claim.

## Discussion

### I.   Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains, however, occurred at the Ingham County Jail in Mason, Ingham County, Michigan. Plaintiff sues Ingham County Sheriff Scott Wriggelsworth and the County of Ingham.

Plaintiff alleges that he was confined at the Ingham County Jail from January 2018 through August 2018, for a parole violation. During that time, Plaintiff was housed in a one man cell with another inmate. The two inmates were locked in the cell together for eighteen hours a day. Plaintiff states that they were allowed out of the cell for two "3-hour periods," during which they could go to the television room. Plaintiff was not allowed any access to the yard or to an area where he could exercise, which resulted in his joints becoming stiff and sore.

Plaintiff claims that "several jail post[s] have been closed due to black mold," which is airborne and jeopardized his health, causing unspecified respiratory complications. Plaintiff states that masks were given to the deputies, but that no masks were available for prisoner use. Plaintiff also asserts that there are signs posted around the jail warning against drinking the water and that the deputies bring water from home. Plaintiff alleges that he continues to experience bladder pain from drinking the water at the jail, implying that he was forced to drink the jail water.

Plaintiff alleges that the computer, which had previously functioned as the law library, has been eliminated, preventing Plaintiff from researching law pertaining to parole violations. The only non-legal material Plaintiff was allowed to receive through the mail was postcards. Letters from friends and family were rejected. Plaintiff was housed with dangerous

convicted felons, who stole his food. Plaintiff asserts that he was in constant fear of being sexually assaulted or stabbed.

Plaintiff contends that Defendants have an "official policy or custom of maintaining unconstitutional conditions" at the Ingham County Jail, that includes double bunking, cell confinement, prohibiting exercise, failing to segregate dangerous criminals, failing to correct the black mold problem, eliminating the computer/law library, and prohibiting all personal mail except postcards. Plaintiff seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Sheriff and County as Defendants

The only Defendants listed by Plaintiff in this case are Ingham County and Sheriff Wrigglesworth. Local governments, such as Defendant Ingham County, are liable only when the asserted injury is caused by an official policy or custom. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the Court looks to the allegations in Plaintiff's

complaint to determine whether Plaintiff has alleged that the sheriff has established a policy or custom which caused him to be deprived of a constitutional right. As noted above, Plaintiff alleges that the unconstitutional conditions in the Ingham County Jail are the result of official policies instituted and enforced by the named Defendants. Therefore, the Court will examine whether the conditions in the Ingham County Jail constituted a violation of Plaintiff's rights.

### III. Conditions of Confinement

Plaintiff appears to be claiming that conditions at the jail violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate

indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Initially, the Court notes that Plaintiff's allegations in this case are nearly identical to those stated by the plaintiff in *Klotz v. Ingham Cty. Jail*, No. 1:17-cv-608, 2017 WL 4173508 (W.D. Mich. Sept. 21, 2017). In that case, the Court addressed the practice of double-bunking at the Ingham County Jail as follows:

> In *Rhodes v. Chapman*, 452 U.S. 337 (1981), the Supreme Court held that prison overcrowding, standing alone, does not violate the Eighth Amendment. Rather, Plaintiff bears the burden of showing that crowded conditions led to independent deprivations of essential food, medical care, sanitation, or other necessities. 452 U.S. at 348. Plaintiff's bare claim that he is double-bunked in a cell that was originally designed for one person fails to demonstrate that his confinement violates either the Eighth or the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 541-43 (1979) (upholding double bunking of pretrial detainees in cells originally designed for one person).

*Id.* at *3. For the same reasons, Plaintiff's claim regarding the practice of double-bunking is properly dismissed.

Plaintiff asserts that he was confined with violent convicted felons and feared for his safety. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least

establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety"). Plaintiff's allegations regarding this claim are entirely conclusory. Because Plaintiff fails to allege any facts showing that the Defendants were deliberately indifferent to a known risk, this claim is properly dismissed.

Plaintiff also claims that he was deprived of an adequate opportunity for exercise, which resulted in stiff and sore joints. In *Klotz v. Ingham Cty. Jail*, the Court noted that the plaintiff's claim that his only time outside the cell was two daily three-hour periods in the television room with other prisoners, and that he was not afforded any opportunity for running or other cardiovascular exercise, was sufficient to state an Eighth Amendment claim for the deprivation of exercise on initial review. *Id*. at *4. Therefore, the Court will not dismiss Plaintiff's deprivation-of-exercise claim.

Plaintiff claims that "several jail post[s] have been closed due to black mold." Plaintiff makes a conclusory assertion that the mold is airborne and jeopardizes his health by causing "respiratory complications." Exposure to black mold may, in an appropriate case, be sufficiently serious as to satisfy the objective component of the Eighth Amendment. *Compare Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005) (mold in the ventilation system violates Eighth Amendment), *with Causey v. Allison*, No. 1:08CV155-RHW, 2008 WL 4191746, at *1 (S.D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *see also McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2-4 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold

is a risk society has chosen to tolerate) (citing *Brady v. State Farm Fire & Cas. Co.*, No. 05-30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006) (dismissing action because the plaintiff did not use due diligence in determining whether mold was airborne or simply present in her house)).

In *Klotz v. Ingham Cty. Jail*, the Court noted that the plaintiff had not made any allegations about the mold being airborne, nor had he alleged that the presence of mold caused him any health problems. *Id.* at *6. In contrast to the plaintiff in *Klotz*, Plaintiff in this case alleges that the black mold is airborne and jeopardized his health, causing "respiratory complications." Plaintiff also alleges that the deputies had been given masks to protect them from the black mold, but that no masks were available for prisoner use. Although Plaintiff's allegations regarding black mold are somewhat conclusory, the Court concludes that they are sufficient to state a claim on initial review.

As in *Klotz v. Ingham Cty. Jail*, Plaintiff in this case claims that the water at the jail was unsafe and that he was forced to drink it. Plaintiff states that he continues to suffer bladder pain as a result of drinking the water at the jail. Consequently, as in *Klotz*, the Court concludes that Plaintiff's allegations regarding the water are sufficient to warrant service of the complaint. *Id.* at *6.

### IV. First Amendment Claims

Plaintiff claims that his right of access to the Courts was violated while at the Ingham County Jail because the computer, which provided law library type services for jail inmates, had been eliminated and prisoners had no access to a law library. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.

*Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

However, the right of access to the courts has never been equated with the access of legal materials at the prison library.  *Walker*, 771 F.2d at 932; *see also Lewis*, 518 U.S. at 351 (a sub-par library or legal assistance program does not establish relevant actual injury).  To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim.  *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).  An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced.  *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."  *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).  Plaintiff in this case has failed to allege any facts showing that suffered actual injury in his pursuit of a legal claim.  Therefore, this claim is properly dismissed.

Finally, Plaintiff contends that Defendants limit prisoner incoming personal mail to postcards only.  Plaintiff asserts that he has had letters from friends and family rejected because they were not on a postcard.  Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail.  *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*

*v. Safley*, 482 U.S. 78 (1987). A prisoner's right to receive incoming mail is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). There may be a legitimate penological interest for a rule requiring all incoming personal mail be limited to postcards, however it is not apparent from current record. The Court concludes that this claim is not properly dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth Amendment claims regarding double-bunking and confinement with dangerous felons, and his First Amendment access-to-courts claim will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims regarding lack of exercise, black mold, and unsafe drinking water, and his First Amendment claim regarding the limitation on personal mail to postcards against both the named Defendants remain in the case.

An order consistent with this opinion will be entered.

Dated: September 26, 2019 /s/ Janet T. Neff
Janet T. Neff
United States District Judge